**EUGENE G. IREDALE (SBN: 75292)**
**JULIA YOO (SBN: 231163)**
**LAW OFFICES OF EUGENE G. IREDALE**
105 West "F" Street, 4th Floor
San Diego, California  92101-6036
TEL: (619) 233-1525  FAX: (619) 233-3221
Attorneys for  SERGIO LOPEZ

UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

(Hon. William Q. Hayes)

| | |
|---|---|
| SERGIO LOPEZ, an individual, ) | Case No.: 07-CV-01272-WQH-BLM |
| ) | |
| Plaintiff, ) | |
| ) | **MOTION IN LIMINE TO EXCLUDE** |
| v. ) | **TESTIMONY OF 1) BILL LEWINSKI**; |
| ) | **2) DALE BOURGEOIS; 3) ELMER** |
| CHULA VISTA POLICE DEPARTMENT, ) | **PELLEGRINO; AND 4) MARK** |
| a municipal sub-agency of the COUNTY ) | **KALISH** |
| OF SAN DIEGO, the CITY OF CHULA ) | |
| VISTA, a municipal corporation, D. ) | |
| CLARK, an individual, G. ARMSTRONG, ) | Hearing Date: January 22, 2010 |
| an individual, D. MARTINEZ, an ) | Time:           1:00 p.m. |
| individual, Sergeant GUTHRIE, an ) | Ctrm:          4 |
| individual, Sergeant FOBES, an individual, ) | Judge          Hon. William Q. Hayes |
| and DOES 1-20, inclusive, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

-1-

Plaintiff Sergio Lopez, pursuant to Federal Rules of Civil Procedure and Fed. R. Evid. 104, 403 and 702,  respectfully moves to preclude the testimony of Bill Lewinski, Dale Bourgeois, Elmer Pellegrino, and Mark Kalish.

The law is clear that "the party tendering the expert has the burden of proving admissibility of the testimony by a preponderance of the evidence." *Norfolk S. Corp. v. Chevron U.S.A., Inc.*, 279 F. Supp 2d 1250 (M.D. Fla. 2003), *reversed on other grounds*, *Norfolk S. Corp. v. Chevron U. S. A., Inc.*, 371 F. 3d 1285 (11th Cir. 2004); *see Allison v. McGhan Med. Corp.*, 184 F. 3d 1300, 1311 (11th Cir. 1999).

The attached reports of Lewinski, Bourgeois, Pellegrino and Kalish demonstrate that none of their opinions are supported by a sufficient factual basis to establish the reliability of those opinions and the Defendants are unable to meet their burden of proving the admissibility of their testimony. Under the guise of proposed expert testimony, defendants seek to smuggle into the trial the credibility determinations of their "expert" witnesses, all of whom explicitly or implicitly, conclude that defendants' versions of events are true, while Plaintiff's is false. (Even though none have bothered to even read Plaintiff's deposition)  The proposed expert testimony is nothing more than unsubstantiated personal opinion about matters which require no special knowledge, skill, experience, training or education, and which invade the province of the jury. Accordingly, all of the Defendants' proposed expert opinions lack a sufficient factual basis to be admissible as expert testimony under Rules 104, 403 and 702 of the Federal Rules of Evidence and the authority set forth below.

### I. THE *DAUBERT* STANDARD FOR ADMITTING EXPERT TESTIMONY.

When "faced with the proffer of expert scientific testimony, then the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1)

**Proposed Pretrial Order**

scientific knowledge that (2) will assist the trier of fact to understand or determine the fact in issue." *Daubert v. Merrill Dow Pharmaceutical, Inc.*, 501 U.S. 579, 592 (1993). The *Dauber*t standard of evidentiary reliability is not limited to scientific testimony. *See Kumho Tire v. Carmichael*, 526 U.S. 137 (1999).

In *Kumho Tire*, the Court held that the *Daubert* standard applied to non-scientific expert testimony and reemphasized that the trial judge must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho Tire v. Carmichael*, 526 U.S. 137 (1999).   Expert testimony is admissible only 'if (1) the expert is qualified to testify competently; (2) the expert has used sufficient reliable methodology in reaching a conclusion; and (3) the testimony will assist the trier of fact.'" *College Park Holdings, LLC v. Racetrac Petroleum Inc.*, 239 F. Supp 2d 1334, 1344 (N.D. Ga. 2002) (citing *Toole v. Baxter Healthcare Corp.*, 235 F. 3d 1307, 1312 (11th Cir. 2000)). Scientific expert testimony must be both relevant and reliable to be admissible. *Daubert,* 509 U.S. at 594-95.   "*Daubert* requires that trial courts act as 'gatekeepers' to insure that speculative, unreliable expert testimony does not reach the jury." *McCovery v. Baxter Healthcare Corp.*, 298 F. 3d 1353, 1256 (11th Cir. 2002).

Opinions of defense experts lack a factual basis and at best are speculative. They have formulated their opinions based upon the limited and one-sided documents provided  by defense counsel.  Federal Rule of Evidence 702 provides that an expert may testify if his or her specialized "knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."  These defense "experts" offer no specialized knowledge that will assist the jury to understand the facts at issue in this case, that is, the opinions of defense experts have no

**Proposed Pretrial Order**

basis in specialized knowledge or reliable methodology. Further, defense experts offer no factual basis to support those opinions which they offer.

Defense experts' opinions are not based upon objective criteria that can be tested. Essentially, defense experts contends their opinions are valid because they say they are. This is precisely the type of purported expert testimony that is not admissible under *Kumho*. A court is not required to admit opinion evidence that is connected to existing data only by the expert's *ipse dixit. See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The majority of Lewinski, Bourgeois and Pellegrino's proposed testimony is nothing more than personal opinion which is unsupported by facts. Their testimony invades the province of the jury and is inadmissible. *Montgomery v. Aetna Casualty & Surety Co.*, 898 F. 2d 1537, 1541 (11th Cir. 1990)(stating "[a]n expert may not, however, merely tell the jury what result to reach.) Their opinions do not constitute proper expert testimony. Plaintiff will be subjected to substantial prejudice should defense experts be allowed to testify in the form of opinions unsupported by specialized knowledge, or reliable methodology, or facts.

Experts should not be permitted to testify to the ultimate conclusion, if their opinion is nothing but disguised legal argument or fact finding. No expert hired by the defense read a deposition transcript of any of the witnesses relied on by the Plaintiff. They read no depositions of Sergio Lopez or any of the federal officials who were subpoenaed by defense counsel to testify in this case. While Lewinski and Pellegrino claim that they read the Plaintiff's complaint, they disregard it completely and rely on "facts" as presented by the defendants only. In forming their expert opinions, they merely repeat and parrot the self serving testimony of the defendants. Their function is solely to bolster the testimony of the defendants by repetition. Their opinions are simply unsubstantiated argument about matters which require no special knowledge, skill,

**Proposed Pretrial Order**

experience, training or education, and which invade the province of the jury.

## II. LEWINSKI SHOULD BE EXCLUDED AS AN EXPERT

Mr. Lewinski recites as qualifications, his studies in obtaining his Ph.D. in police psychology. Mr. Lewinski received a degree from "Union Institute." This Ph.D. program encompasses one year course work completed entirely through correspondence. This is drastically different from a Ph.D. program in psychology which requires several years of advanced studies.[1] Union Institute of Cincinnati's Ph.D program was not APA accredited. While Mr. Lewinsky's "concentration of study" during the one-year program was psychology/police training, this degree does not make anyone a psychologist.

Curiously, according to Mr. Lewinski, nine years before completing his M.A. in counseling, he became a clinical psychologist. Seven years before he obtained the Ph.D. via correspondence school, he was already teaching a law enforcement program in Minnesota, lecturing on police stress, crisis intervention, sex crimes investigation and tactical communication, despite the fact that the only degree he held was a Masters in counseling with a thesis in "an alternative explanation for the Stockholm Syndrome."

Mr. Lewinski holds himself out as the nation's leading expert on "police psychology." While Mr. Lewinski feels free to offer his opinion on matters of police official business and police conduct, he has never held any position in law enforcement in his career. When asked if he had any experience at all in law enforcement, Mr. Lewinsky once answered "...brief stint as a justice of the peace with the province of Manitoba, but that's the closest that I ever come to an official position."

Mr. Lewinski has never completed any study that was peer-reviewed. The study he speaks

---

[1] Department of Labor Occupational Outlook Handbook

**Proposed Pretrial Order**

of extensively in his report is self-published on his own website.  He has never been published in a peer-reviewed journal. His company website lists no studies or articles that have been peer-reviewed.

Lewinski's opinions are not fact-based.  In generating his opinion, Mr. Lewinski did not review the deposition transcripts of any witness other than the defendants. He did not ask for or read the deposition transcripts of Sergio Lopez or any federal agent who were deposed by defense counsel. Mr. Lewinski relies entirely on the version of events told by the defendants. While Mr. Lewinski received a copy of the amended complaint, he chose to ignore the document entirely in writing a report.

In this case, defendants have retained Mr. Lewinski to testify "regarding officer abilities...police officer reaction time and judgment." Mr. Lewinski writes in his opinion that Mr. Lopez' behavior was "atypical" for law enforcement official. Mr. Lewinski has no basis to determine what is typical or atypical of a law enforcement official. He has no specialized knowledge or training with respect to "officer abilities."  He has never even attended police academy. As to "reaction time," it is not an issue in the case and is wholly irrelevant.

In paragraph two of his opinion, Mr. Lewinski offers that he reviewed some information several years ago about police impersonation and that he read something about it on Wikipedia. He further opines that "it can be concluded that the impersonation of a law enforcement officer is not an unusual problem that the officers face." Mr. Lewinski may have read that in Wikipedia, but that does not render him an expert in police practices. There is nothing relating to Mr. Lewinski's proposed testimony to qualify under Fed. R. Evid. 702 as "scientific, technical or other specialized knowledge" that would "assist the trier of fact to understand the evidence or to determine a fact in issue." This is especially so given that Mr. Lewinski did not ask for, and

**Proposed Pretrial Order**

therefore did not receive, deposition transcripts of anyone other than the defendants. Mr. Lewinski's parroting of the Defendants' own testimony as his own "expert opinion" cannot aid the jury in any way.

The majority of Mr. Lewinski's opinion centers around defendants' perception that plaintiff was being confrontational and that this behavior caused the defendants to believe that plaintiff was not a law enforcement officer. Mr. Lewinski completes his report by stating that the "officers actions, from a behavior science perspective, were logical and reasonable." Mr. Lewinski is not a psychologist and he has not treated any of the defendants. His only basis as to what was in the minds of the defendants was from reading their deposition. It does not take an expert to repeat whatever the parties assert. There is no scientific basis for this opinion. Whether defendants acted reasonably is for the jury to determine.

Lewinski's proposed expert testimony either concerns his opinions regarding Mr. Lopez's state of mind or his personal characterizations regarding the appropriateness of the use of force, but he has no factual basis for these personal opinions, which are at best are speculative. Mr. Lewinski offers information regarding use of a handgun or knives in his report, which are irrelevant and inflammatory and offered solely to prejudice Mr. Lopez.

The vast majority of cases in which Lewinski has testified involved gunfire. Mr. Lewinski is not qualified to be an expert in police practices. Mr. Lewinski testified in a deposition in another case that he would not testify as to whether a party made "a good tactical choice," because "that's not my area" and not within his training.

Even in shooting cases, Mr. Lewinski has been disqualified as an expert multiple times, most recently in July of 2009 by the District Court for the Central District of California. Plaintiff had argued that Mr. Lewinski's opinion was nothing but junk science. The Court in *Miller, et al.*

**Proposed Pretrial Order**

*-v- City of Los Angeles*, et al, EDCV 07-806-VAP (JCRx), found:

> "Plaintiffs' Motion in Limine No. 4 Re: Defense Experts' Testimony
> On March 2, 2009, Plaintiffs filed their "Motion in Limine No. 4 to Exclude or Limit Defendants' Designated Expert Testimony" ("Plaintiffs' MIL No. 4").
> As to Dr. Lewinski's proffered testimony, the Court GRANTS the Motion.  Accordingly, the Court bars Dr. Lewinski from testifying because his testimony lacks the requisite scientific foundation. See Fed. R. Evid 401, 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137 (1999)."

Lewinski was disqualified as an expert in *Humphrey v. Leatherman*, 2004-cv-00339, a 2005 Oklahoma case to testify about shooting reconstruction in which he sought to testify. The Oklahoma federal court found that Mr. Lewinski was not trained in forensic shooting reconstruction and has never processed a crime scene or studied bullet trajectories. Mr. Lewinski was allowed only to testify regarding the narrow areas of body movement and dynamics and shooting time.

There is obviously nothing relating to Mr. Lewinski's proposed testimony to qualify under Fed. R. Evid. 702 as "scientific, technical or other specialized knowledge" that would "assist the trier of fact to understand the evidence or to determine a fact in issue." Accordingly, plaintiffs request that the Court exclude his testimony as not meeting the tests for scientific or expert testimony stated in *Daubert* and *Kimho Tire*.

### III. DALE BOURGEOIS SHOULD BE EXCLUDED AS AN EXPERT.

Dale Bourgeois is not qualified as an expert. He is employed by the city of Chula Vista and claims to have a background in surveillance and undercover operation. According to the

**Proposed Pretrial Order**

Defendants' Rule 26 disclosures, "Sgt. Bourgeois is an in-house police expert who is expected to testify specifically as to undercover procedures, appropriate disclosure by an undercover officer and the use of a taser and the use of force in detention situation."  Mr. Bourgeois read only the depositions of the defendants and the police report. He did not read the deposition transcripts of third party witnesses or Mr. Lopez.

There is no indication that Mr. Bourgeois has any special knowledge regarding law enforcement tactics, procedures, or training. He has not trained officers or written policy with respect to any of these issues. There is nothing in his curriculum vitae regarding the use of the Taser or his expertise on the use of force.  Dale Bourgeois is a police officer who has been working for Chula Vista Police Department since 1996. Other than that, he has no more knowledge than any other officer who has served in similar capacity for 13 years, other than the fact that he attends conferences held by California Narcotics Officers Association.  He cannot qualify under Fed. R. Evid. 702 as having "scientific, technical or other specialized knowledge" that would "assist the trier of fact to understand the evidence or to determine a fact in issue." Mr. Bourgeois should not be allowed to testify regarding the use of the Taser or the use of force.

Despite the Rule 26 disclosures, Mr. Bourgeois offers a much more expansive opinion regarding general training of officers. There was nothing in his Supplemental Expert Disclosures or his Curriculum Vitae regarding his knowledge, experience and training on the issue of law enforcement training or that he would offer his testimony on such a subject.

Mr. Bourgeois' report is peppered with factual determinations and conclusions of law. "It seems clear Lopez was agitated and yelling obscenities..." "Lopez' actions of actively resisting the officers escalated the force used against him."  "Lopez should know that getting out of his vehicle in an angry or aggressive manner is going to put uniformed officers on alert...In fact,

**Proposed Pretrial Order**

officers are trained that this can sometimes be a diversionary tactic used by criminals." This is a text book example *ipse dixit* expert testimony that is not admissible under *Daubert.* Bourgeois claims "over the years the Special Investigation Unit has released several information bulletins to sworn personnel reference violent criminals using police equipment during their crimes...I've attached some of these bulletins to this report." Those documents attached to his report were all generated in 2007 and 2008 with a single exception. This incident occurred in 2006. Mr. Bourgeois does not have any specialized qualification to speak regarding false identification or false ID.

Bourgeois offers his opinion that "the force used on Lopez was appropriate and dictated by the actions conducted by Lopez." This witness has not provided any information as to his background on being a police practices expert. Bourgeois finished his report with "it is my opinion that Lopez' actions were not only unprofessional, but rise to a level of conduct unbecoming of a law enforcement official. Lopez violated several vehicle codes (sic) while driving towards his surveillance operation and also delayed the officers in their official duties." This statement is irrelevant as unprofessional conduct by a plaintiff is not a defense in this case.

Violation of a Vehicle Code provision likewise is not a defense to the issue of excessive force or detention after Defendants discovered Mr. Lopez' identity. Bourgeois has no "scientific, technical or other specialized knowledge" with respect to the issues about which he wishes to testify.

### IV.  PELLEGRINO SHOULD BE EXCLUDED AS AN EXPERT.

Elmer Pellegrino has been hired to testify as a police practices expert. Even though he writes that he reviewed the Plaintiff's complaint, he promptly disregards it in its entirety. For page after page of his "expert" report, Mr. Pellegrino reiterates facts as claimed by the defendants

**Proposed Pretrial Order**

and relies on those representations in forming his opinion. Mr. Pellegrino's methodology is also unclear. He refers vaguely to training "within the law enforcement community" in forming his opinion. He repeatedly states that "it is [his] opinion..." but does not state why or how he comes to his findings.  Mr. Pellegrino also states that the defendants' decision to use deadly force was reasonable, (Pellegrino P. 7, Para. 4) apparently using boilerplate from another case, since this case involves excessive but not deadly force.  It is clear that no matter what actions defendants took, Mr. Pellegrino would find a way to justify them. This kind of activism is not the role of an expert.

### V. MARK KALISH SHOULD BE EXCLUDED AS AN EXPERT

Mark Kalish is a psychiatrist who wrote a report for the defense.  His finding in its entirety is the following:

> There is nothing in the records provided thus far that would indicate that the plaintiff suffers from any psychiatric condition or disorder as a result of the subject incident. The records do indicate that the plaintiff has returned to work with no psychiatric restrictions. The letter by Dr. Cava dated May 4, 2007, indicates that the plaintiff is not taking any medications that would interfere with any of his desk duties. Dr. Cava also indicates that the plaintiff poses no risk to anyone in his department and he is not talking any medications that would impair his judgment in any way.
>
> The records do indicate that he was prescribed Valium eight months after the subject incident. There is no indication as to why the Valium was prescribed, therefore no conclusion can be reached as to its relationship to the subject incident.
>
> I hope this report has been of some help. If additional medical or psychiatric records become available, I would be happy to review those and provide you with a supplemental report.  Attached to this report, please find a copy of my curriculum vitae and a listing of cases in which I have testified over the past four years.

**Proposed Pretrial Order**

Dr. Kalish cannot testify to any issue in the case because he did not examine Sergio Lopez. The only thing Dr. Kalish has done is read somebody else's medical records, at the end of which he could not draw any conclusions. His testimony should be excluded under Rule 403 as a complete waste of time.

## VI.  CONCLUSION

The "experts" proffered by the defense have no evidence or information of value to provide the jury in this case. In the guise of "expert" opinion, they make credibility findings, argue for defendants' factual claims, make legal conclusions, and engage in rank speculation for which they have neither the training or background. In place of intellectual rigor and disciplined analysis, they use *ipse dixit* and derogatory characterization to attempt to argue the case in conclusory terms from the witness stand. The court should exclude their proposed "testimony."


DATED: December 11, 2009



     /s/ Julia Yoo
JULIA YOO
EUGENE G. IREDALE
Attorneys for Plaintiff

**Proposed Pretrial Order**